IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| NEAL MORRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 305-057 |
| | ) |
| CORRECTIONS CORPORATION OF | ) |
| AMERICA, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Johnson State Prison in Wrightsville, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A.

### I. BACKGROUND

*Liberally* construing Plaintiff's complaint, the Court finds the following. Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment while he was incarcerated at Wheeler Correctional Facility ("Wheeler") in Alamo, Georgia. Plaintiff has sued the following individuals and entities:

(1) the Corrections Corporation of America, Inc. ("CCA"), (2) John Doe, the President of CCA ("Doe"), (3) the Georgia Department of Corrections ("GDOC"), (4) the GDOC Privatization Unit ("PU"), (5) Peggy McBrayer, Director of the PU ("McBrayer"), (6) FNU Stone, the GDOC State Monitor ("Stone"), (7) James Donald, GDOC Commissioner ("Donald"), (8) Ralph Kemp, Warden of Wheeler ("Kemp"), (9) FNU Holton, Deputy Warden of Care and Treatment of Wheeler ("Holton"), (10) Pat Clark, Medical Director of Wheeler ("Clark"), (11) Dr. Sightler, (12) Nurse Gay, and (13) Nurse Dinkins.

According to Plaintiff, there is a vast and secret conspiracy between Defendants and state officials to divert money intended for inmate health care to line the coffers of CCA and Georgia state officials. (Doc. no. 2, pp. 6-7). According to Plaintiff, the result is poor health care for inmates at Wheeler, a private prison run by CCA and his former place of incarceration. According to Plaintiff, his problems began at Coastal State Prison, when he was denied proper treatment and medication following a failed back surgery. (Id. at 7-8). Plaintiff names no one at Coastal State Prison as a defendant; however, Plaintiff alleges that his problems continued in 2004 when he was transferred to Wheeler. (Id. at 8).

First, Defendant Dr. Sightler refused to give Plaintiff any medication for his "severe pain" or to see Plaintiff at all during his "sick call" requests (Id. at 9-15). Defendants Nurse Gay and Dinkins likewise refused to treat Plaintiff. (Id.). Plaintiff also reports that he has been seeing "free world" doctors throughout this period, and Defendants should be made to pay for his medical care. (Id. at 15-16).

*Liberally* construing Plaintiff's complaint, the Court finds that he has stated *arguably* viable claims against Defendants Dr. Sightler, Nurse Gay, and Nurse Dinkins for deliberate

indifference to a serious medical need. See Farmer v. Brennan, 511 U.S. 825, 835-39 (1994). Accordingly, the Court has ordered that service of process be issued as to these Defendants. However, the Court advises that the balance of Plaintiff's claims be dismissed.

## II. DISCUSSION

First, the Court rejects Plaintiff's claims regarding a scheme to divert money intended for inmate health care as patently frivolous.[1] Moreover, to the extent Plaintiff avers that a gaggle of Defendants have engaged in a conspiracy to violate prisoners' rights, the Court rejects any such claim because Plaintiff's allegations are conclusory, vague, and general. Kearson v. Southern Bell Tel. & Tel. Co., 763 F.2d 405, 407 (11th Cir. 1985) (*per curiam*); see also Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) ("[A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. . . It is not enough to simply aver in the complaint that a conspiracy existed."). To prove conspiracy under § 1983, a plaintiff must (1) prove the parties had a "meeting of the minds" or reached an understanding to violate the plaintiff's rights and (2) prove an actionable wrong to support the conspiracy. See Bailey v. Board of County Comm'rs of Alachua County, Fla., 956 F.2d 1112, 1122 (11th Cir. 1992). "[T]he linchpin for conspiracy is agreement, which

---

[1]Under § 1915, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)(citation and quotation omitted). Complaints "describing fantastic or delusional scenarios" are thus correctly deemed frivolous. Id. at 1349. The Eleventh Circuit has also explained that a complaint is frivolous "when it appears the plaintiff has little or no chance of success." Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993) (*per curiam*) (citations omitted). Thus, the Court properly dismisses those of Plaintiff's claims which patently lack merit or "realistic chances of ultimate success." Carter v. Ingalls, F. Supp. 834, 835 (S.D. Ga. 1983)(Bowen, J.)(citing Jones v. Ault, 67 F.R.D. 124, 129 (S.D. Ga. 1974)).

presupposes communication . . . ." Id. Here, Plaintiff does not offer any specifics on how an agreement between any persons--let alone between a panoply of private individuals, business entities, state officials, and state agencies--may have been reached to violate Plaintiff's rights.

In addition, the Court notes that Plaintiff purports to sue all Defendants in their official capacities. The Eleventh Amendment bars official capacity damage actions against state prison officials. Kentucky v. Graham, 473 U.S. 159, 169 (1985). That settled, the remainder of Plaintiff's claims against Defendants CCA, Doe, GDOC, PU, McBrayer, Stone, Donald, Kemp, Clark, and Holton also fail.

First, the GDOC is a state agency and cannot be sued for monetary damages.[2] "The Eleventh Amendment insulates a state from suit brought by individuals in federal court unless the state either consents to suit or waives its Eleventh Amendment immunity." Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (footnote omitted, citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)). Arms or agencies of the state are also immune from suit. Alabama v. Pugh, 438 U.S. 781, 782 (1978) (*per curiam*). Simply put, "[t]here can be no doubt [] that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [Georgia] has consented to the filing of such a suit."); Edelman v. Jordan, 415 U.S. 651, 663 (1974); see also Stevens, 864 F.2d at 115 (Georgia Department of Corrections is barred from suit by Eleventh Amendment). The PU, also an apparent state agency, is also likely immune from suit for the same reason.

---

[2] As Plaintiff has been transferred to a new prison, any claim for injunctive relief is **MOOT**.

Regardless, Plaintiff's claims against these Defendants appear to be based entirely on a theory of *respondeat superior* or supervisory liability. Plaintiff does not aver that any of these Defendants had any involvement in his medical care. Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). Likewise, employers and private contractors[3] cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000)(citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory); see also Monell, 436 U.S. at 691. To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor/employer actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor/employer and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). As noted, Plaintiff has not alleged that these Defendants actually participated in his medical care in any way.

Similarly, Plaintiff fails to allege a "causal connection" between these Defendants and

---

[3]Of course, private contractors that run prisons, like CCA, do act under color of state law for purposes of § 1983 liability. Farrow v. West, 320 F.3d 1235, 1239 n.3 (11th Cir. 2003). Nevertheless, as explained herein, the principle that *respondeat superior* is not a cognizable theory of liability under § 1983 holds true regardless of whether the entity sued is a state, municipal, or private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129-30 (11th Cir. 1992).

the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[4] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Beyond accusations in conclusory and general terms, Plaintiff has proffered no allegations to suggest that these Defendants knew about any widespread abuse or that they were responsible for a custom or policy which resulted in deliberate indifference to Plaintiff's medical needs. In sum, Plaintiff has failed to state a claim upon which relief may be granted against these Defendants.[5]

---

[4] The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). Plaintiff's conclusory allegations fall well short of that standard.

[5] Moreover, if Plaintiff is attempting to state a stand alone claim for an alleged failure to properly process his grievances against any Defendants, that allegation, too, fails to state a claim for relief. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's claims for monetary damages against the individual defendants in their official capacities be **DISMISSED**, and that Defendants CCA, Doe, GDOC, PU, McBrayer, Stone, Donald, Kemp, Clark, and Holton be **DISMISSED**.

SO REPORTED and RECOMMENDED this 14th day of December, 2005, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983). "There is no right to a particular type of process in the handling of prison grievances.... [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. In a nutshell, Plaintiff's bare allegations concerning deficiencies in processing his grievances do not implicate his federal constitutional rights. See id.; see also Wildberger v. Bracknell, 869 F.2d 1467, 1467-68 (11th Cir. 1989) (per curiam) (affirming lower court decision that "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution").