ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| NEAL MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 305-057 |
| | ) | |
| FNU GAY, Nurse, Wheeler Correctional Facility, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brought the captioned case pursuant to 42 U.S.C. § 1983. The matter is now before the Court on the motion for summary judgment filed by Defendants Sightler, Gay, and Dinkins, as well as the motion for summary judgment fild by Defendant Stone. (Doc. nos. 51, 59). Because Plaintiff has not filed any response, the Court deems the motions for summary judgment unopposed.[1] See Loc. R. 7.5. For the following reasons, the Court **REPORTS** and **RECOMMENDS** that Defendants' motions for summary judgment be

---

[1] The Clerk has given Plaintiff notice of Defendants' motions for summary judgment, has apprised him of his right to file affidavits or other materials in opposition, and has informed him of the consequences of failing to respond. (Doc. nos. 55, 59). Moreover, after noting that Plaintiff had not responded, the Court entered an order instructing him about the effect of failing to respond and giving him additional time to prepare a response. (Doc. no. 60). Accordingly, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. Of course, the Court acknowledges that the mere fact that the instant motions are unopposed does not entitle the Court to grant the motions without considering the merits. United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Florida, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion.").

**GRANTED**, that Plaintiff's claims against Defendants Gay and Stone be **DISMISSED** without prejudice for failure to exhaust administrative remedies, that summary judgment on the merits be **GRANTED** to Defendants Sightler and Dinkins, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of all Defendants.

## I. BACKGROUND

**A.    The Alleged Indifference to Plaintiff's Serious Medical Needs**

At all times relevant to the events which form the basis of this lawsuit, Plaintiff was an inmate at Wheeler Correctional Facility ("WCF") in Alamo, Georgia. (Doc. no. 2, pp. 9-15). WCF is a private prison operated by the Correctional Corporation of America under a contract with the Georgia Department of Corrections ("DOC") Privatization Unit. (Doc. no. 57, Ex. B, Stone Aff. ¶ 4).

Defendant Sightler was a physician, and also served as Medical Director, at WCF at the time of the events set forth in Plaintiff's complaint. (Doc. no. 53, Ex. J, Sightler Aff. ¶ 2). Defendant Dinkins was employed in WCF's medical clinic, primarily serving as the pill call nurse. (Id., Ex. K, Dinkins Aff. ¶¶ 2-3). Defendant Gay, a former WCF employee, was employed in the WCF medical clinic, primarily serving as the sick call nurse. (Id., Ex. L, Gay Aff. ¶ 1). Defendant Stone was the State Contract Monitor at WCF, and it was his responsibility to monitor the prison for contract compliance and to conduct investigations with regard to compliance issues. (Doc. no. 57, Ex. B, Stone Aff. ¶ 4).

Plaintiff's medical history includes two major traumatic injuries. (Doc. no. 53, Ex. A, Pl.'s Dep., pp. 6-7). First, Plaintiff fell off a ladder at work in 1998 and injured his neck, which required corrective surgery. (Id. at 8). Second, Plaintiff hurt his lumber spine in late 2002 when he was lifting a roll of carpet. (Id. at 6). Plaintiff was given steroid injections

and nerve blocks to treat this spinal injury in February 2003, and underwent a laminectomy in April 2003. (Id. at 8-10).

Plaintiff claims that the next notable event in his medical history occurred during April 2004, when he fell, after his leg gave way, causing his head to strike the bunk frame in his prison dorm. (Id. at 13). Plaintiff claims that he did not see a prison physician regarding his complaints of pain following his fall, although medical records indicate otherwise. (Doc. no. 53, Ex. A, Pl.'s Dep., pp. 12-14, Ex. C, Grievance 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, Ex. I, Medical Records, p. 74). Plaintiff also claims that, prior to the April fall, he was seen by an outside physician who ordered a lumbar MRI and X-rays, neither of which were completed. (Id. at Ex. A, Pl.'s Dep., 12-13).

Plaintiff alleges that Defendant Sightler failed to prescribe him appropriate pain medication and failed to examine him at sick call. (Doc. no. 2, pp. 9-15). He also alleges that Defendant Sightler failed to follow the course of treatment recommended by outside physician consultants. (Id.; doc. no. 53, Ex. A, Pl.'s Dep., pp. 19, 21-25). Plaintiff further alleges that Defendant Gay refused to examine him or refer him to the prison's physician. (Doc. no. 2, p. 10). Plaintiff's claims against Defendant Dinkins are based upon the allegation that she failed to properly dispense his medication as prescribed by Defendant Sightler. (Id. at 9-10, 13). Moreover, Plaintiff maintains that Defendant Stone failed to properly investigate his claims that he was not receiving proper pain medication for his back condition. (Doc. no. 2, p. 13; doc. no. 53, Ex. A, Pl.'s Dep., p. 17).

With regard to Plaintiff's claims, Defendants contend that Plaintiff only exhausted administrative remedies with respect to two of his claims: (1) that Defendant Sightler failed to follow the advice of outside physician consultants, and (2) that he was denied his

3

medication at 2:00 p.m. pill call by Defendant Dinkins between the dates of November 17, 2004, to December 2, 2004. (See doc. no. 53, Exs. E, D).

**B.     The Administrative Grievance Process**

Before assessing whether Plaintiff has complied with 42 U.S.C. § 1997e(a), it will be helpful to explain the grievance procedure used in the Georgia state prison system. All prisons within the DOC, including WCF, maintain a grievance procedure that is available to all inmates. (Doc. no. 57, Ex. A, Cadena Aff. ¶¶ 6- 8, Ex. E, SOP IIB05-0001). The goal of this grievance procedure is to provide an open and meaningful forum for inmate complaints and an avenue for the resolution of these complaints.

The grievance process is governed by the procedures specified in Standard Operating Procedure ("SOP") IIB05-0001. (Doc. no. 57, Ex. E, SOP IIB05-0001). Upon entering the DOC, each inmate receives an oral explanation of the grievance process as well as a copy of the Orientation Handbook for Offenders, which includes instructions regarding the procedure. (Id., Ex. A, Cadena Aff. ¶ 7). Grievance forms are made available to all inmates upon request. (Id. ¶ 9).

SOP IIB05-0001 § VI(B) states that prior to filing a formal grievance form, the inmate must first complete the informal grievance procedure. (Doc. no. 57, Ex. E, SOP IIB05-0001 § VI(B)(5)). The informal grievance must be filed no later than ten (10) calendar days from the date the inmate knew, or should have known, the facts giving rise to the grievance. (Id.).

After the completion of the informal grievance procedure, the inmate may pursue his complaint through the formal grievance procedure. The inmate must fill out and sign his formal grievance form and return it to his counselor within five (5) business days of his

4

receipt of the written resolution of his informal grievance. (Id. § VI(C)(2)). The inmate's counselor then prepares a report summarizing the facts and findings regarding the complaint and makes a recommendation to the grievance coordinator. (Doc. no. 57, Ex. A, Cadena Aff. ¶ 9). The grievance coordinator reviews the counselor's recommendation, indicates either concurrence or disagreement, and then forwards a recommended response to the warden. (Id.). The warden then reviews the grievance and makes an official response. The warden's response is given to the inmate in writing and states the reasons for the decision. SOP IIB05-0001 § VI(C)(14) states these steps shall be completed within thirty (30) calendar days from the date the formal grievance was filed with the counselor and that all formal grievances may be appealed. The inmate is also advised of the appeal procedure, and a grievance appeal form is given to the inmate at this step in the grievance process. (Id.).

The inmate may appeal the warden's decision to the Office of the Commissioner of the DOC within five (5) business days. (Id., Ex. E, SOP IIB05-0001 § VI(D)(2),(5)). Once the Commissioner's Office renders a decision, and returns the grievance to the grievance coordinator and the inmate, the grievance procedure is complete. (Id.).

### C. Administrative Remedies

Katherine Cadena is the Manager of the Office of Inmate Affairs and Appeals for the DOC. (Id., Ex. A, Cadena Aff. ¶ 4). Ms. Cadena is responsible for ensuring that the grievance appeal procedure is properly complied with, ensuring that all appeals are investigated and responded to in a timely fashion, and ensuring that all records and documentation relevant to the appeals are retained in the ordinary course of business. (Id. ¶ 5).

Ms. Cadena reviewed Plaintiff's grievance history and found that he filed two grievances related to his claims that he was not receiving proper pain medication. (Id. ¶ 12). On April 21, 2004, Plaintiff filed Grievance 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, in which he alleged that Defendant Sightler and the WCF Medical Department were not providing him with appropriate medical care for his back condition. (Id. ¶ 13; doc. no. 57, Ex. C, Grievance 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). The investigation revealed no evidence of medical neglect and that Plaintiff was receiving treatment for his back condition. The grievance was found to be without merit and denied on that basis. Plaintiff did not appeal Grievance 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. (Doc. no. 57, Ex. C, Grievance 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).

On September 24, 2004, Plaintiff filed Grievance 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, in which he alleged that Defendant Sightler refused to provide him with the pain medication ordered by a back specialist. (Doc. no. 57, Ex. A, Cadena Aff. ¶ 14, Ex. D, Grievance 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). The investigation revealed no evidence to support Plaintiff's allegations. (Doc. no. 57, Ex. D, Grievance 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). The grievance was denied. Plaintiff appealed. The appellate authority affirmed the denial, finding that his complaints of back pain were investigated by the DOC Health Services Clinical Team, which determined that his treatment was adequate and appropriate. (Id.).

Mrytle Evans is an employee at WCF and is familiar with the grievances Plaintiff filed at the facility. (Doc. no. 53, Ex. H, Evans Aff. ¶¶ 2-4). In addition to the grievances described above, Ms. Evans stated that Plaintiff filed three additional grievances. (Id. ¶ 4). On June 2, 2005, Plaintiff filed Grievance 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 claiming that Deputy Warden Holton should be removed from her position because she refused to grant an informal grievance regarding the denial Plaintiff's pill call. (Doc. no. 53, Ex. G, Grievance 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). This

6

grievance was denied and no appeal was filed. (Id., Ex. H, Evans Aff. ¶¶ 2-4). On May 13, 2005, Plaintiff filed Grievance 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 alleging that Defendant Dinkins and the medical administrator, Pat Clark, denied him medication at pill call. (Id., Ex. F, Grievance 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). This grievance was denied, and no appeal was filed. (Id., Ex. H, Evans Aff. ¶¶ 2-4). On December 14, 2004, Plaintiff filed Grievance 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, alleging that Defendant Dinkins refused him pain medication at 2:00 p.m. pill call between the dates of November 17, 2004, to December 2, 2004. (Id.; doc. no. 53, Ex. E, Grievance 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). This grievance was upheld. (Doc. no. 53, Ex. H, Evans Aff. ¶¶ 2-4).

Having clarified the factual background of the case, the Court turns to the merits of the motions for summary judgment.

## II. DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests

---

[2]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

8

**B.     Plaintiff's Claims**

    **1.     Failure to Exhaust Administrative Remedies**

Section § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998). Simply put, as the plain language of § 1997e(a) makes clear, if an administrative remedy is "available," it must be exhausted. 42 U.S.C. § 1997e(a); see also Alexander, 159 F.3d at 1326 (explaining that under PLRA courts are "to focus solely on whether an administrative remedy program is 'available'").

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. __, 126 S.Ct. 2378, 2387 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 2385-86 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 548 U.S. __, 126 S.Ct. 2978 (2006). Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 Fed. Appx. 918, 920 (11th Cir. Jan. 17, 2006) (quoting

9

Johnson, 418 F.3d at 1155). Similarly, to exhaust all available administrative remedies, an inmate must pursue an administrative appeal if his grievance is denied. Moore v. Smith, 18 F. Supp. 2d 1360, 1362 (N.D. Ga. 1998).

In this case, as described above, Plaintiff has failed to exhaust administrative remedies with respect to all but two of his claims. First, Plaintiff exhausted his claim that Defendant Sightler failed to follow the recommendations of a consulting physician because he appealed to the highest level and complied with all administrative requirements. (Doc. no. 53, Ex. D, Grievance 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). Second, Plaintiff properly exhausted his claim that Defendant Dinkins failed to properly dispense his pain medication at pill call for approximately twenty (20) days, from November 17, 2004 to December 2, 2004, as Plaintiff was granted relief on his grievance regarding this issue. (Id., Ex. F, Grievance 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; doc. no. 52, pp. 7-8). Conversely, Plaintiff's claim against Defendant Gay for refusing to examine him or refer him to the prison's physician and Plaintiff's claim against Defendant Stone for failing properly investigate his claims that he was not receiving proper pain medication for his back condition were not properly exhausted and should be **DISMISSED** without prejudice.

### 2. The Merits of Plaintiff's Exhausted Deliberate Indifference Claims

Even though Plaintiff properly exhausted his claims that Defendant Sightler failed to follow the recommendations of a consulting physician and that Nurse Dinkins failed to properly dispense his pain medication, Plaintiff has not met his burden of demonstrating that these Defendants were deliberately indifferent to his serious medical needs.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle

10

v. Gamble, 429 U.S. 97, 104 (1976) (internal quotation omitted). Thus, under the Eighth Amendment, prisoners have a right to receive medical treatment for illness and injuries. See id. at 103-05. To state a viable claim for deliberate indifference a prisoner must allege facts which demonstrate: (1) an objectively serious medical need, and (2) that Defendants acted with deliberate indifference to that need. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004).

To show that Defendants were deliberately indifferent to his needs, Plaintiff must set forth facts which demonstrate that Defendants: (1) were subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendants disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Id. In this regard, it should be recognized that the mere fact that a prisoner "may have desired [a] different mode[] of treatment" does not give rise to a claim for deliberate indifference. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985). "Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments." Id. (citation omitted). Put another way, a mere difference of opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment will not support a claim of cruel and unusual punishment. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

The Court also emphasizes that "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation and citation omitted). Furthermore, the Eighth Amendment does not mandate that the medical care provided to the

11

prisoner "be perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). Only a showing of <u>deliberate indifference</u> gives rise to a constitutional injury. As the Supreme Court has explained:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 105-06.

In the instant case, although Plaintiff has satisfied the objective standard by demonstrating a serious back condition, Plaintiff has not met the subjective component of the deliberate indifference standard with regard to either of his exhausted claims. Plaintiff alleges that Defendant Sightler was deliberately indifferent to his back condition because he failed to follow the recommendations of outside consultants regarding the treatment of his condition. (Doc. no. 2, pp. 8-9). One such consultant, Dr. Fremont P. Wirth, recommended that Plaintiff undergo an MRI to determine the extent of his injuries and that he be administered steroid injections and pain medications. (Doc. no. 51, Attach 1, p. 3; doc. no. 53, Ex. I, Medical Records, p. 196). Plaintiff underwent an MRI on February 25, 2004, and, on the advice of Dr. Wirth, was placed on a pain management program under the care of another outside physician, Dr. David G. Shores. (Doc. no. 51, Attach 1, p. 3; doc. no. 53, Ex. I, Medical Records, p. 203). Plaintiff's pain management program included epidural steroid injections and further diagnostic studies. (Doc. no. 53, Ex. I, Medical Records, pp. 175-78, 181-83).

Apparently, the only course of treatment recommended by an outside consultant which Defendant Sightler varied was the type of pain medication Plaintiff was prescribed. Plaintiff takes issue with Dr. Sightler's decision in this regard. (Doc. no. 2, p. 12). However, Plaintiff does not identify what types of pain medication the outside consultants recommended, which medications were actually prescribed by Defendant Sightler, or why he feels that the medication prescribed by Dr. Sightler was less effective than that recommended by the outside consultant, let alone provide evidentiary support regarding the effectiveness of the medication he was prescribed. Defendant Sightler clarifies the issue, stating that Dr. Wirth recommended that Plaintiff be given the pain medication Lortab. (Doc. no. 53, Ex. J, Sightler Aff. ¶ 4). Lortab was not on the DOC drug formulary, and therefore, Plaintiff was prescribed a comparable pain medication, Darvocet. (Id.). Plaintiff's medical records reveal that Plaintiff was prescribed various types of pain medication, including Darvocet, throughout out his incarceration at WCF. (Doc. no. 51, Attach 1, p. 4; doc. no. 53, Ex. I, Medical Records, pp. 177, 184, 186, 193, 219, 228).

As set forth above, the fact that Plaintiff may dispute Dr. Sightler's course of treatment does not support a claim for cruel and unusual punishment based upon deliberate indifference to a serious medical need. Harris, 941 F.2d at 1505. The record illustrates that Plaintiff received extensive treatment for his back condition, and the mere fact that he disagreed with the type of pain medication he was receiving is not sufficient to support his § 1983 claim.

As to Plaintiff's remaining claim, Plaintiff states that Defendant Dinkins denied him his medication after November 17, 2004, but fails to provide any additional details regarding this alleged incident. (Doc. no. 2, p. 13). Presumably, Plaintiff is referring to the incident

set forth in his grievance that Defendant Dinkins denied him his pain medication at 2:00 p.m. pill call from November 17, 2004, through December 2, 2004. (Doc. no. 53, Ex. E, Grievance 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). However, with regard to this claim, Nurse Dinkins was simply dispensing Plaintiff's medication as prescribed by Defendant Sightler, twice daily, at 8:00 a.m. and 8:00 p.m., as needed. (Id., Ex. I, Medical Records, p. 12, Ex. K, Dinkins Aff. ¶ 4). Plaintiff's prescription did not allow Defendant Dinkins to dispense Plaintiff's medication at 2:00 p.m. pill call during this time period. Thus, Defendant Dinkins was not deliberately indifferent to Plaintiff's serious medical needs for failing to do so.

However, it appears that on November 19, 2004, a genuinely problematic issue arose with respect to Plaintiff's pain medication. On this date Plaintiff's supply of Darvocet ran out. (Id., Ex. K, Dinkins Aff. ¶ 4, Ex. N, Clark Aff. ¶ 4). Darvocet was not received by the prison and dispensed again until November 22, 2004. (Id.). Interestingly, neither Plaintiff's grievance or his complaint specifically references this event. Even so, it appears that the prison recognized this issue and granted relief.

The brief filed by Defendants' Sightler, Gay, and Dinkins, and the materials submitted in support of their claim for summary judgment, are inconsistent with regard to whether Plaintiff received his Darvocet as prescribed. On one hand, Defendants contend that Plaintiff's medication administration sheets from November 1, 2004, to December 31, 2004, illustrate that he properly received his medication during this time period. (Doc. no. 52, p. 11 citing (doc. no. 53, Ex. I, Medical Records, pp. 219, 228)). However, as Defendants concede several pages earlier, Plaintiff's supply of Darvocet ran out and had to be ordered and shipped from an outside pharmacy in Philadelphia, Pennsylvania; therefore, it is obvious

14

that Plaintiff was denied access to this medication for several days during the end of Novermber 2004. (Id. at 7 n.1 citing (doc. no. 53, Ex. N, Clark Aff.)).

Pat Clark, a nurse at WCF, stated that during the period that Plaintiff's supply of medication was exhausted there was not another supply to draw upon because each drug dosage is dedicated for a particular patient. (Doc. no. 53, Ex. N, Clark Aff. ¶ 4). With regard to the available supply of Darvocet, Defendant Dinkins indicated that the entire supply of Darvocet at WCF was exhausted during this time period and had to be reordered. (Id., Ex. K, Dinkins Aff. ¶ 5). Regardless, it is apparent that certain members of the WCF staff were remiss in their duties with regard to ensuring that the stock of Darvocet at WCF was sufficient and, as a result, an inmate with a serious back condition was denied his pain medication for approximately three days.

Even so, Plaintiff does not set forth sufficient facts to create a triable issue with respect to this event. The record contains no evidence that Plaintiff complained to Defendant Dinkins, or any other Defendant, regarding the unavailability of his medication or indicated that he was in significant pain and immediately required his prescribed medication, or a comparable substitute, to alleviate his condition and that Defendants refused to act. Indeed, Plaintiff's medication was reordered and arrived in three (3) days. Accordingly, the evidence in the record does not support Plaintiff's claim that Defendant Dinkins was deliberately indifferent to Plaintiff's serious medical needs.

### III. CONCLUSION

For the foregoing reasons, the Court **REPORTS** and **RECOMMENDS** that Defendants' motions for summary judgment be **GRANTED**, that Plaintiff's claims against

Defendants Gay and Stone be **DISMISSED** without prejudice for failure to exhaust administrative remedies, that summary judgment on the merits be **GRANTED** to Defendants Sightler and Dinkins, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of all Defendants.

SO REPORTED and RECOMMENDED this 27th day of February, 2007, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE